THE JAEGER FIRM, PLLC
STEVEN R. JAEGER
23 Erlanger Road
Erlanger, KY  41018
Telephone:  859/342-4500
859/342-4501 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES A. CAPUTO
M. ALEXANDRA ROYAL
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| In re GENERAL CABLE CORPORATION SECURITIES LITIGATION | ) ) ) | Master File No. 2:14-cv-00022-WOB-CJS |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | ELECTRONICALLY FILED |
| ALL ACTIONS. | ) ) ) | LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND THE JANUARY 27, 2015 JUDGMENT AND FOR LEAVE TO FILE THE PROPOSED AMENDED COMPLAINT |

1008310_1

# TABLE OF CONTENTS

**Page**

I.      Introduction ...................................................................................................1

II.     The Rule 59(e) Standards on this Motion .........................................................3

III.    The Order Is Grounded on Clear Error and Results in Manifest Injustice,
        Warranting Relief Under Rule 59(e) ................................................................4

        A.      The Court Erred in Denying Plaintiff the Opportunity to Amend on the
                Complaint's First Review .......................................................................4

        B.      The Court Erroneously Concluded Corporate Scienter Was Not Pleaded ............6

        C.      The Purportedly Competing Inferences the Court Draws to Dispatch
                Scienter Are Not Supported by the Alleged Facts ....................................9

        D.      Plaintiff's Internal Control Allegations Cannot Be Dismissed as Being
                Merely Conclusory ...............................................................................12

        E.      The Magnitude of the Restatements Exceeded Mere Materiality and
                Supports an Inference of Scienter ........................................................15

        F.      The Allegations of General Cable's Earlier Admission of Materially
                Flawed Inventory Controls Are Erroneously Mischaracterized ...........................17

        G.      Newly Disclosed Evidence of General Cable's Failed Internal Controls
                Should Be Permitted to Be Added to Plaintiff's Scienter Allegations .................18

IV.     To Prevent Manifest Injustice, Plaintiff Should Be Given Leave to File the
        Amended Complaint ......................................................................................20

V.      Conclusion .................................................................................................22

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ....................................................5

*Doshi v. Gen. Cable Corp.*,
   No. 2:14-cv-22, 2015 U.S. Dist. LEXIS 9306
   (E.D. Ky. Jan. 27, 2015) ................................................ *passim*

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................20

*Empire Title Servs. v. Fifth Third Mortg. Co.*,
   298 F.R.D. 528 (N. D. Ohio 2014) ..........................................5

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................6, 20, 21

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) .............................................7, 16

*GenCorp, Inc. v. American Int'l Underwriters*,
   178 F.3d 804 (6th Cir. 1999) ................................................20

*Halcomb v. Black Mountain Res., LLC*,
   No. 13-141-DLB, 2014 U.S. Dist. LEXIS 163750
   (E.D. Ky. Nov. 21, 2014) ....................................................4

*Helwig v. Vencor, Inc.*,
   251 F.3d 540 (6th Cir. 2001) ................................................20

*In re Ames Dep't Stores, Inc. Note Litig.*,
   991 F.2d 968 (2d Cir. 1993)................................................15

*In re Guidant Corp. S'holders Derivative Litig.*,
   No. 1:03-cv-0955-SEB-WTL, 2005 U.S. Dist. LEXIS 45701
   (S.D. Ind. Dec. 22, 2005) ....................................................5

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ........................................ *passim*

*In re Sunrise Senior Living Derivative Litig.*,
   550 F. Supp. 2d 1 (D. D.C. 2008) ..........................................5

- ii -

**Page**

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ...........................................................................3

*Konkol v. Diebold, Inc.*,
    590 F.3d 390 (6th Cir. 2009) .................................................................14, 16

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010)...............................................................4

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) .........................................................................20

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) .....................................................................9, 16

*Marks v. CDW Computer Centers, Inc.*,
    122 F.3d 363 (7th Cir. 1997) ...................................................................10, 11

*Moore v. Paducah*,
    790 F.2d 557 (6th Cir. 1986) .........................................................................20

*Morse v. McWhorter*,
    290 F.3d 795 (6th Cir. 2002) .....................................................................4, 20

*North Point Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
    929 F. Supp. 2d 740 (M.D. Tenn. 2013)...........................................................16

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir 2004) ..........................................................................16

*Ricker v. Zoo Entm't, Inc.*,
    534 F. App'x 495 (6th Cir. 2013) ...................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................9, 11

*United States ex rel. Bledsoe v. Cmty. Health Sys.*,
    342 F.3d 634 (6th Cir. 2003) .......................................................................4, 5

*United States v. Reyes*,
    660 F.3d 454 (9th Cir. 2011) .........................................................................15

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78dd-1 .................................................................................................................19

Federal Rules of Civil Procedure
  Rule 12(b)(6).............................................................................................1, 2, 5, 9
  Rule 15(a)............................................................................................... *passim*
  Rule 59(e)............................................................................................... *passim*

Pursuant to Rules 59(e) and 15(a) of the Federal Rules of Civil Procedure, Lead Plaintiff City of Livonia Employees' Retirement System ("Plaintiff") hereby moves this Court to alter or amend its January 27, 2015 Judgment [Dkt. No. 122] dismissing with prejudice Plaintiff's Corrected Consolidated Complaint for Violations of Federal Securities Laws ("Complaint")[1] [Dkt. No. 97], and grant Plaintiff leave to file the [Proposed] Amended Consolidated Complaint for Violations of Federal Securities Laws ("Amended Complaint"), attached as Ex. 1 to the accompanying Declaration of James A. Caputo in Support of Lead Plaintiff's Motion to Alter or Amend the January 27, 2015 Judgment and for Leave to File the Proposed Amended Complaint ("Caputo Decl.").

## I.    Introduction

On January 27, 2015, the Court dismissed Plaintiff's Complaint[2] with prejudice. As grounds, the Court's Opinion and Order ("Order"), reported at *Doshi v. Gen. Cable Corp.*, No. 2:14-cv-22 (WOB-CJS), 2015 U.S. Dist. LEXIS 9306 (E.D. Ky. Jan. 27, 2015) ("*Doshi*") focused solely on the Complaint's failure "to support a strong inference of scienter." *Id.* at *30.  Plaintiff, in the Court's view, "simply lack[ed] the type of particularized facts that would lead a reasonable person to find a powerful or cogent inference of fraudulent intent as to any of the defendants." *Id.* at *32.[3]

---

[1]    All "¶" references are to the Complaint and unless otherwise noted, all emphasis is added and all internal citations are omitted.

[2]    Plaintiff's Complaint was filed on June 24, 2014.  Thereafter, Defendants moved to dismiss, and briefing on the Rule 12(b)(6) motion was completed on September 11, 2014.  The motion was heard on January 7, 2015.

[3]    *See, e.g.*, *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *16 ("the complaint contains no particularized facts to support an inference that General Cable knew of the intentional misconduct occurring in Brazil and deliberately concealed it"); *id.* at *18 ("But again Plaintiffs fail to allege something more – allegations of insider trading, for example – from which to infer scienter."); *id.* ("Without other facts, these allegations could pin a fraudulent motive on any executive with stock-related incentive compensation."); *id.* at *24 ("Plaintiffs describe the 2005 problems generally . . . and alleged no specific facts showing how the prior problems would cause Defendants to know of the later problems."); *id.* at *25 ("They argue . . . that Defendants must have either known their certifications were false when made or Defendants must not have evaluated the company's internal controls at all.

Although the Court believed the identified fact-pleading failures could not support Plaintiff's claims, it denied Plaintiff the mandated opportunity to address them through amendment by dismissing the Complaint with prejudice. This was error.

The Complaint was the first consolidated complaint in this action, and this Court's review was its first under Federal Rule of Civil Procedure 12(b)(6). Importantly, the Court never found or even suggested amendment would be prejudicial to Defendants or futile. And as the Amended Complaint demonstrates, the identified deficiencies can be – and are – readily remediated. Under these circumstances, Rule 59(e) warrants leave to address these solely fact-pleading concerns.

The Court also improperly characterized and analyzed the Complaint's core scienter allegations, resulting in manifest legal error.

For example, the Court erred in:

- finding that scienter could not be imputed to General Cable through Rest Of World ("ROW") chief executive Mathias Sandoval's knowing or reckless misconduct and efforts to shield the accounting irregularities from disclosure;

- drawing inferences going beyond the pleaded facts to find allegations regarding the duration of the accounting fraud, the consistent benefit General Cable derived from the accounting irregularities, and the Company's clearly weak internal controls over financial reporting could not support scienter inferences;

- dismissing as "conclusory" allegations that the internal control deficiencies would have been revealed had Defendants not recklessly evaluated them;

- rejecting that the restatements' magnitude exceeded "mere materiality" and therefore did not evidence scienter; and

- rejecting the inference that Defendants' knowledge of earlier failures of inventory controls put them on notice of the need to ensure those controls were effective during the Class Period.

---

The facts alleged support neither conclusion."); *id.* at *25-*26 ("Plaintiffs do not allege specific facts suggesting that Defendants had reason to believe these controls were necessary or that Defendants considered them and recklessly rejected them.").

Additionally, after the Complaint was filed and after briefing on Defendants' motion was completed, the Sixth Circuit stated the controlling pleading standard for imputed corporate scienter in *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014).  Although the Court addressed the *Omnicare* analysis in its Order, Plaintiff never had the opportunity to plead to that standard or to benefit from the Sixth Circuit's guidance on this key scienter issue.  Plaintiff's counsel specifically raised this concern in oral argument when requesting leave to amend, but this request was apparently overlooked when the Court dismissed the Complaint with prejudice.

Also, after the Complaint was filed, Defendants were forced to admit to continuing internal control failures regarding potential Foreign Corrupt Practices Act ("FCPA") violations for illegally paying "commissions" to foreign government officials.  These potential Class-Period violations were apparently discovered by applying the same internal control protocol that Defendants insisted was being diligently employed during the Class Period.  For this failing, too, Defendants cannot have it both ways: either Defendants were diligent in their control oversight and lied about the "commissions" to foreign officials or they were reckless in disregarding these accounting and potentially criminal violations.  Either way, this further evidence of scienter should be allowed to support Plaintiff's claims.

While these matters can be addressed on appeal, it will be far more efficient to the judicial process to alter or amend the Judgment and permit the Amended Complaint to be filed.  This would also comport with the strong policy in this Circuit of having actions resolved on their merits.

## II.     The Rule 59(e) Standards on this Motion

Rule 59(e) permits a court to reconsider its judgment and alter or amend as warranted.  That warrant arises when there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

- 3 -

At issue here is the clear error in dismissing the Complaint with prejudice, the recognition of newly discovered evidence and the avoidance of manifest injustice by permitting the Amended Complaint's filing. The Sixth Circuit "has not precisely defined 'clear error' in the context of the Rule 59(e) analysis," but "a high standard applies" such that the errors must be "'so egregious that an appellate court could not confirm the judgment.'" *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010). The prevention of manifest injustice serves as a "catch-all provision," requiring the court to "weigh the importance of bringing litigation to a firm conclusion and the need to render fair and just rulings." *Id.* Further, when relief under Rule 15(a) and Rule 59(e) is requested in the same motion, "the inquiry into both motions 'turns on the same factors.'" *Halcomb v. Black Mountain Res., LLC*, No. 13-141-DLB, 2014 U.S. Dist. LEXIS 163750, at*4 (E.D. Ky. Nov. 21, 2014). Nevertheless, the court "still has 'considerable discretion in deciding whether to grant' the motion." *Id.* at *5. And the principle guiding the court's discretion is whether leave to amend "'is required to prevent an injustice.'" *Id.* at *6.

## III. The Order Is Grounded on Clear Error and Results in Manifest Injustice, Warranting Relief Under Rule 59(e)

### A. The Court Erred in Denying Plaintiff the Opportunity to Amend on the Complaint's First Review

In this Circuit, "'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 644 (6th Cir. 2003). "In the securities litigation context, leave to amend is particularly appropriate where the complaint does not allege fraud with particularity." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Yet, the Court prejudicially dismissed Plaintiff's claims for precisely that reason. *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *32-*33 ("Plaintiffs simply lack the type of particularized facts that

- 4 -

would lead a reasonable person to find a powerful or cogent inference of fraudulent intent as to any of the defendants.").

The Complaint was Plaintiff's first submission of the consolidated claims to the Court. That consolidation was not itself an amendment. *In re Sunrise Senior Living Derivative Litig.*, 550 F. Supp. 2d 1, 4 (D. D.C. 2008) ("the consolidation of separate complaints does not constitute an amendment of the individually filed complaints"); *In re Guidant Corp. S'holders Derivative Litig.*, No. 1:03-cv-0955-SEB-WTL, 2005 U.S. Dist. LEXIS 45701 at *8 (S.D. Ind. Dec. 22, 2005) (same). The motion to dismiss was the first opportunity for the Court's review.[4]  With the prejudicial dismissal and concurrent final judgment, Plaintiff was denied its "one chance to amend."

The error in that precipitous cutoff of Plaintiff's claims is made more obvious by the lack of any justification for doing so.  In the procedural posture here, leave to amend is not available only "'where there is "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."'" *Bledsoe*, 342 F.3d at 644.  None of these considerations are present here, and indeed, the Court does not point to any of them in finding prejudice.  As the accompanying Amended Complaint demonstrates, remedy of the identified deficiencies is certainly not futile.  *See Empire Title Servs. v. Fifth Third Mortg. Co.*, 298 F.R.D. 528, 530 (N. D. Ohio 2014) ("Underscoring the strong preference for deciding cases on the merits, the Sixth Circuit has held that it is not appropriate to dismiss even improperly pled claims with prejudice without giving the party an opportunity to correct the pleading deficiency.").

---

[4]   Defendants' Rule 12(b)(6) moving papers were "argumentative, partisan submissions"; they were no substitute for the Court's review and analysis and do not trigger an obligation to amend. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990).

Under the circumstances here, Plaintiff should be granted leave to amend, as the "outright refusal to grant . . . leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## B.    The Court Erroneously Concluded Corporate Scienter Was Not Pleaded

After the dismissal motion was fully briefed, the Sixth Circuit issued *Omnicare*, which newly stated the "middle ground" criteria for testing corporate scienter pleading.  769 F.3d at 475-76. Applying the *Omnicare* analysis to the Complaint, the Court found Mathias Sandoval ("Sandoval"), the President and Chief Executive Officer of General Cable's Rest of World ("ROW") division, fell "within the categories of persons described in *Omnicare* whose knowledge may be imputed to the corporation."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *31.  The Court also recognized that General Cable had admitted that "ROW executive management," which refers to Sandoval as ROW's president and chief executive, "became aware of allegations of theft and inventory accounting issues in January 2012 but failed to notify General Cable's executive management of the issues until September 2012."  *Id.* at *30.

That admission came in General Cable's amended Form 10-K/A report for the 2012 fiscal year.  Complaint, Ex. 2, at 46.  There, General Cable also admitted:

> ROW executive management overrode controls, resulting in, among other things, a delay in the reporting of inventory accounting issues and allegations of theft to the Company's executive management, and set and improper "tone at the top." Specifically, ROW executive management . . . did not investigate the matter promptly, did not report findings in its belated inquiry on a timely basis, discouraged Brazilian personnel from disclosing the matters in their quarterly financial certifications, and failed to identify the matter in [ROW's] own quarterly certifications that they provided to the Company's executive management. Moreover, ROW management engaged in other improper actions . . designed to delay the reporting of expenses or other charges, including improper capitalization of costs, misuse of accruals and failure to timely report inventory shortfalls identified through physical inventory counts. . . .   ROW executive management placed

excessive emphasis on meeting business plan goals rather than on the integrity of the financial reporting process.

For his misconduct and material violation of General Cable's Code of Ethics, Sandoval, as the Court acknowledged, was stripped of his previously awarded incentive-compensation under General Cable's "Clawback Policy." *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *31. Notwithstanding these facts, the Court concluded: "Although Sandoval may have been aware of problems and failed to disclose them, there are no facts to support that he did so with ***intent*** to defraud. Instead, the allegations support an inference that his intent was one shared by most corporate executives: to be profitable and achieve business goals." *Id.* at *32. This conclusion erroneously misconceives the alleged facts and the requisite scienter for securities fraud.

Here, Sandoval was admittedly aware of the alleged material accounting irregularities by at least January 2012. Instead of immediately addressing this failed accounting, he worked to stop its disclosure, continuing to allow General Cable's materially false financial statements to reach investors while also continuing to take bonuses for meeting performance goals. Thus, by at least January 2012 – if not before, as Plaintiff alleges – Sandoval actually knew or, at minimum, recklessly disregarded the material falsity of General Cable's financial reporting. His knowing or reckless misconduct worked to deceive investors about the true state of General Cable's financial results. Plaintiff need plead no more than this to establish the requisite intent for corporate scienter. *Omnicare*, 769 F.3d at 472 ("To satisfy [the scienter element], plaintiffs must plead facts showing that defendants had a "'mental state embracing intent to deceive, manipulate or defraud.'"" "[W]e have read this language to require plaintiffs to allege facts showing that defendants acted with at least recklessness."); *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011) ("*Dana II*") ("Scienter may take the form of 'knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness.'").

- 7 -

The Court posited a competing inference for Sandoval's intent: "Instead, the allegations support an inference that his intent was one shared by most corporate executives: to be profitable and achieve business goals." *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *32. Plaintiff's allegations, however, did not support this inference of innocent intent. One might expect a corporate executive to strive for profit and to reach business plan goals. But to do so by knowingly or recklessly misrepresenting the company's financial performance is fraud, not a common goal for corporate executives. This is the alleged nature of Sandoval's scienter, and no reasonably drawn inference can compete with that conclusion. Indeed, if Sandoval's conduct had been nothing more than innocent efforts "to be profitable and achieve business goals," General Cable would not have forced him to resign and taken back his performance bonuses. *Id.*[5]

The Court does note, however, that Sandoval's purpose was to "achieve business goals." That, along with the underlying admission that Sandoval elevated "meeting business plan goals" over accounting integrity, demonstrates that Sandoval was acting within the scope of his employment. Sandoval's deliberate wrong was for General Cable's benefit, not for his personal

---

[5]     Through its March 31, 2013 Schedule 14A filing with the SEC, General Cable disclosed:

> In March 2013 at a Special Meeting of the Board of Directors, our Board, at the recommendation of our Compensation Committee, determined to seek recoupment, under our Clawback Policy, of the 2011 AIP bonus award paid to Mr. Sandoval, our former Executive Vice President, and President and Chief Executive Officer, General Cable Rest of World, in February 2012 for the 2011 performance year. Mr. Sandoval resigned on November 13, 2012 in connection with the internal investigation of certain accounting matters, which were the subject of the Restatement. The determination to pursue recoupment of Mr. Sandoval's 2011 AIP bonus and the subsequent action were taken after careful consideration of the results of the internal investigation of certain accounting matters in Brazil and the resulting Restatement.

Corrected Request for Judicial Notice in Support of Lead Plaintiff's Response to Defendants' Motion to Dismiss Corrected Consolidated Complaint for Violations of the Federal Securities Laws [Dkt. No. 106].

benefit.  He did not, for example, embezzle from General Cable, but sought to achieve "business goals" at the sacrifice of proper accounting.  *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008) (an employee's deliberate wrongs cannot be "imputed to his employer unless they are not only within the scope of his employment but in attempted furtherance of the employer's goals").

On these facts, Sandoval's scienter is imputed to General Cable under *Omnicare*, and as the Amended Complaint demonstrates, this conclusion can be even more strongly supported through the proposed allegations.[6]  On this basis alone, Plaintiff should be granted relief from judgment under Rule 59(e).

### C.  The Purportedly Competing Inferences the Court Draws to Dispatch Scienter Are Not Supported by the Alleged Facts

Faced with a Rule 12(b)(6) motion, a court (i) must "accept all factual allegations in the complaint as true," (ii) must "consider the complaint in its entirety" as well as incorporated and properly noticed documents, and (iii) in determining whether a strong inference of scienter has been pleaded, "must take into account plausible opposing inferences."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.  Here, to dispatch scienter the Court improperly drew opposing inferences that go beyond the allegations' truth or any reasonable inference available from the alleged facts.

---

[6]   At oral argument, Plaintiff's counsel specifically informed the Court that Plaintiff had not had the opportunity to plead corporate scienter under the new and clarified *Omnicare* standards and that amendment for that purpose would not be futile.  Caputo Decl., Ex. 2 at 36.  Nor did Defendants argue or the Court conclude it was.  That request was apparently overlooked in reaching the Order.

To draw many of these inferences, the Court focused on the theft at the Company's Brazilian facilities.  Regarding, for example, the remarkably long duration of the accounting violations, the Court opined "the duration of the errors speaks less to the Defendants' states of mind and more to the thieves' sophistication."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *20.  The Complaint does not mention anything about the thieves' character, let alone their "sophistication."  In fact, the theft may have been so unsophisticated that it could have been wholly prevented by placing a working security camera at the facility's entrance and having departing vehicles pass over a truck scale.  These were acknowledged "physical security controls . . . to prevent theft" that General Cable conceded were absent or ineffective during the Class Period.  Complaint, Ex. 2, at 45.  Indeed, given the admitted, materially weak controls over financial reporting, there was likely no need for a "sophisticated" cover up.  *See Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 369 (7th Cir. 1997) (error for the district court to improperly substitute "its own conclusions for facts").

Also, the manifold accounting irregularities – in Brazil and throughout the rest of the ROW – all markedly improved General Cable's financial results.  ¶¶25-41, 53.  To minimize the scienter inference arising from this fact, the Court offered that:

> To operate without detection, a theft scheme must disguise the losses, as unexplained losses might elicit investigation and discovery.  Thus, any corporation victimized by theft would report inventories that were greater than the actual figures until discovering the theft.  Likewise, any error related to understatement of costs will lead to a "favorable" adjustment for the corporation.

*Doshi*, 2015 U.S. Dist. LEXIS 9306, at *22.

The Court apparently presumed that the Brazilian thefts continued because there was no detection.  But there was.  As alleged, discrepancies between physical inventory counts and inventory values on the Brazilian accounting system were detected.  ¶122.  A cost analyst, for example, reported a $1.8 million discrepancy between the reported physical inventory and the accounting system values.  *Id.*  However, "[w]hen a large discrepancy between the inventory detail

- 10 -

within the accounting system and a physical inventory account was detected, PDIC management would not believe the difference was real." *Id.* All of these the detections required an immediate accounting adjustment, but those adjustments were delayed for years. While there are no allegations about the thieves' "disguise [of] the losses," the Complaint does evidence that the lack of management supervision, coordinated accounting practices and financial controls allowed thefts to continue, notwithstanding known inventory discrepancies. Under these circumstances, that all of the accounting irregularities, even those occurring outside Brazil, inured to General Cable's benefit does support an inference of scienter. *See* ¶¶25-41, 53.

Focusing again on the Brazilian thefts, the Court opined: "Given that a complex theft scheme was at work – one that employed efforts to ***actively conceal*** the inventory loss – there is no guarantee that better internal control measures could have prevented the losses." *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *26 (original emphasis). Again, there is simply no allegation about the thieves or their efforts or ability to conceal the theft. The Court continues: "The thieves might simply have adjusted their strategy to continue avoiding detection." *Id.* These conclusions are all speculative, improperly going beyond an "opposing inference [that] one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. In order to sustain a scienter inference regarding years of General Cable's materially weak internal controls, the Court, in essence, is requiring Plaintiff to prove the negative about the unknown thieves; that is, that they lacked the ability to overcome "better" internal controls. No standard requires – or even could require – such pleading. *See Marks*, 122 F.3d at 368 n.2 (reversing a dismissal and finding error in requiring plaintiff to "affirmatively plead specific facts showing that there was no information in . . . books and records" that could reveal fraud in order to negate that the underlying allegation was "conclusory"). The staggering record of failed internal

- 11 -

controls over financial reporting here bespeaks scienter.  Conjecture that some unidentified thieves might someday outwit some yet-to-be-disclosed internal controls does not undermine that inference.

Finally, the Court highlights Defendant Kenny's statement, reported by a confidential witness, that "Hey, they are a successful organization, leave them alone, let them do their thing." ¶121.  The Court concludes that "[t]his statement suggests not that Defendants ignored obvious 'red flags' but instead that they held a genuine belief that [ROW] did not need closer scrutiny."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *28.  The highlighted sentence, however, is stripped of its context.  The immediately preceding sentences, attributed to the same confidential witness, note that (i) ROW used a "completely different financial system" from the rest of the Company, (ii) there was no discussion of integrating "ROW operations into the General Cable financial reporting system," and (iii) although ROW's financial results were consolidated, "if you ever tried to get any details behind those numbers, good luck."  ¶121.  In context, the expressed concern was that ROW's financial reporting was, in fact, inscrutable.  The Court's contrary inference finds no traction in the cited allegation.

### D.    Plaintiff's Internal Control Allegations Cannot Be Dismissed as Being Merely Conclusory

In the period between 2008 and the first quarter of 2013, Defendants Kenny and Robinson repeatedly

- admitted their responsibility for establishing and maintaining internal controls;

- certified they had evaluated General Cable's disclosure controls and internal controls over financial reporting; and

- certified those controls as effective based on their evaluation.

¶58.  These certifications were purportedly grounded on evaluations comparing General Cable's internal controls' effectiveness to the Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO framework"), a

model for internal control standards used by almost all Securities and Exchange Commission ("SEC") registrants.  ¶¶59, 63-64.  Plaintiff alleges that, given the scope and rigor of the COSO framework, evaluating General Cable's then extant controls against that framework would have revealed the alleged material weaknesses.  ¶63.  The Court finds these allegations to be merely "conclusory" and should not be credited.  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *25.  This finding overlooks Defendants' contrary admission.

As part of General Cable's restatement efforts, Defendants "reevaluated the effectiveness of the Company's internal control over financial reporting as of December 31, 2012 using the [COSO framework].  As a result of the reevaluation and based on the criteria in the COSO Framework, management concluded, based upon the material weaknesses identified . . . that the Company did not maintain effective internal control over financial reporting."  Complaint, Ex. 2 at 45.  The deficient controls revealed through this evaluation included:

- "the computation of cost of sales and balances of finished goods and work-in-process inventory, including the related VAT assets, in Brazil within the Company's [ROW] segment and the revenue recognition in connection with bill and hold transactions in Brazil,"

- "ROW segment management oversight, including management override affecting financial reporting and the setting of an improper ' tone at the top,' which placed an excessive emphasis on meeting business plan goals rather than on the integrity of the financial reporting process."  *Id.*

These deficiencies:

which prevented the timely detection of theft of a substantial quantity of inventory, the detection and internal reporting of inventory-related accounting issues, the detection of the overstatement of VAT assets due to the theft and accounting errors, and the detection of failure to meet requirements under relevant accounting pronouncements related to revenue recognize in connection with bill and hold transactions collectively constituted a material weakness in inventory controls at Brazil and material weaknesses in the controls related to ROW executive management.  *Id.*

- 13 -

These material control weaknesses were at the heart of General Cable's false financial reporting. They were revealed through the December 31, 2012 evaluation of the Company's internal controls using the rigorous COSO framework. Complaint, Ex. 2, at 44. This evaluation took place only *after* General Cable had to concede its financial reporting from 2008 through the first quarter of 2013 could not be relied upon. *Id.* at 45. Notably, this is the *same* COSO framework-based evaluation that Defendants Kenny and Robinson purportedly had employed, participated in and supervised for the fiscal periods at issue, as disclosed in General Cable's SEC Form 10-K and 10-Q filings. ¶¶55-59, 63-64. Accordingly, the results of Defendants' own evaluation evidence that during the Class Period, they either were (i) reckless in evaluating General Cable's internal controls and then certifying to investors that those controls were effective, or (ii) if they did do proper evaluations, they knowingly misrepresented the Company's internal controls' effectiveness for over 18 fiscal quarters. As Plaintiff has alleged, this conclusion is unavoidable and, importantly, factually supported by Defendants' belated concession.[7] ¶¶54-65, Complaint, Ex. 2, at 45. The undeniable conclusion arising from Defendants' internal control evaluation also distinguishes this case from *Konkol v. Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009), where there were no "contemporaneous

---

[7]    Regarding the discovery of the material internal control weaknesses in the Company's Brazil operations, the Court stated: "That General Cable had encountered problems in its own system does not support the inference that General Cable was on notice of problems in *another company's* system." *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *24-*25 (original emphasis). The ROW segment, to which the Brazilian operations belong, was not a separate company, but a wholly owned subsidiary of General Cable. ¶4. Defendants Kenny and Robinson were responsible for maintaining a system of internal controls over financial reporting for *all of General Cable*. ¶¶54-55. Thus, the ROW segment, like all of General Cable's other subsidiaries, was subject to the Company's internal control system. That, as alleged, ROW operated largely outside of the Company's internal control reporting and procedures should have been a red flag to Defendants and contributed to the financial reporting failings they had to admit. Complaint, Ex. 2 at 45. This, too, undermines the conclusion that there were no "facts suggesting that Defendants had reason to believe these controls were necessary." *See Doshi*, 2015 U.S. Dist. LEXIS 9306, at *25-*26. In repeatedly certifying General Cable's financial reporting controls as effective between 2008 and the first quarter of 2013, Defendants either recklessly disregarded or misrepresented the state of ROW's internal controls over financial reporting.

- 14 -

facts showing that the Defendants knew or should have been aware" the certification-related statements were false.  *See Doshi*, 2015 U.S. Dist. LEXIS 9306, at *29.

E.    **The Magnitude of the Restatements Exceeded Mere Materiality and Supports an Inference of Scienter**

The restatements' magnitude, both in terms of the needed adjustments and the time and effort spent to determine them, support an inference of scienter.  ¶¶42, 49-52.  To draw an opposing inference, the Court acknowledged the accounting errors were material, but concluded their "relative financial impact was minimal."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *21.  To reach this conclusion, the Court focused solely on the understatement of costs for fiscal year 2011 and determined that it represented 0.3% of the Company's total cost of sales.  *Id.*  From this, the Court concluded that "from a day-to-day management perspective, the deviation of 0.3% in costs would not raise an 'obvious red flag.'"  *Id.*

In reaching this contrary inference, the Court overlooked several important facts.  General Cable's management was highly unlikely to have had "day-to-day" access to consolidated cost data for the entire Company.  For most public companies, such access is only available on a quarterly basis.  But whether that information was available daily or quarterly, it is not the key metric for determining materiality. Net income and earnings per share are.  *See, e. g.*, *United States v. Reyes*, 660 F.3d 454, 469 (9th Cir. 2011) ("Where, as here, the earnings were overstated because of improper accounting at the time, such information affects investors decisions to buy or sell."); *In re Ames Dep't Stores, Inc. Note Litig.*, 991 F.2d 968, 980 (2d Cir. 1993) ("investors in equity securities generally are concerned with a company's earning prospects since equity securities usually trade, to a greater extent, on a company's earnings outlook").

Focusing on the those accepted drivers of materiality reveals that the magnitude of the errors here are significant.  General Cable's net income for the years 2009 through 2011 was overstated by

- 15 -

51.75%, 23.13% and 53.76%, respectively.  Earnings per share for that same time period was

respectively overstated by 50.70%, 23.58% and 53.92%.  ¶42.  The quarterly earnings results for

those time periods are even more remarkable.  For example, the respective quarterly net income for

fiscal year 2011 was overstated by 21.27%, 8.38%, 142.86% and 237.50%.  While a quantitative

materiality threshold is not fixed, the SEC accepts that a 5% variance likely reveals material

differences.[8]  Here, these overstatements greatly exceed that "rule-of-thumb" materiality threshold

and should have flagged a concern for Defendants.[9]

Read fairly, Plaintiff's allegations regarding the restatements support a scienter inference.

*See, e.g.*, *Dana II*, 646 F.3d at 960 (finding a strong inference of scienter in quarterly net income

overstatements ranging from 3.6 to 70%); *North Point Firefighters' Pension-Local Option Plan v.*

*Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 784-85 (M.D. Tenn. 2013) (finding a 24% increase in

---

[8]   SEC Staff Accounting Bulletin: No. 99 – Materiality ("The use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption that – without considering all relevant circumstances – a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material.  The staff has no objection to such a "rule of thumb" as an initial step in assessing materiality.").

[9]   The Court cites *Konkol*, 590 F.3d 390 and *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir 2004) in its analysis of Plaintiff's scienter allegations.  *See Doshi*, 2015 U.S. Dist. LEXIS 9306, at *21-*22.  Both of these cases, following the Supreme Court's *Tellabs* decision, were abrogated in part in *Dana II*, 646 F.3d at 961.  Their failing was the sorting and analyzing of scienter allegations individually.  *Id.*  Now, in this Circuit "the only appropriate approach . . . to review[ing] scienter pleadings [is] based on the collective view of the facts, not the facts individually."  *Id.*  Plainly, the analyses and reasoning underlying the *Konkol* and *PR Diamonds* decisions derive from an individuated review of scienter allegations.  Thus, for example, the *PR Diamonds* court's reasoning that "[t]o support an inference of fraudulent scienter, allegations of GAAP . . . violations must extend in nature and magnitude beyond merely the materiality threshold" apparently forecloses consideration that those violations also arose from failed control over financial reporting occurring over multiple years.  *PR Diamonds*, 364 F.3d at 695.  By applying those panels' reasoning to the individual components of Plaintiff's overall scienter pleading here, the Court is effectively importing the scienter review that both *Tellabs* and *Dana II* rejected.  The mandated analysis must consider "'whether all of the facts alleged, taken collectively, give rise to strong inference of scienter.'"  *Dana II*, 646 F.3d at 961.

- 16 -

net income informs the scienter analysis).  To reach its opposing inference, the Court traverses the *Tellabs*' mandate and thereby errs.

>    **F.    The Allegations of General Cable's Earlier Admission of Materially Flawed Inventory Controls Are Erroneously Mischaracterized**

The Court also erred in mischaracterizing Plaintiff's allegations regarding General Cable's earlier inventory control deficiencies and misapplying *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495 (6th Cir. 2013), an unpublished disposition.  In 2005 General Cable admitted that its internal controls over financial reporting regarding inventory were materially weak.  ¶117.  Defendants Robinson and Kenny authorized the SEC report acknowledging these internal control problems.  ¶118.  From this, Plaintiff alleged these Defendants "were aware of General Cable's prior inventory control and financial reporting deficiencies and the need to address those weaknesses further in connection with the PDIC acquisition and ROW operations."  ¶119.  In reviewing these allegations, the Court suggested a nearly identical inference: "[O]ne could infer that a prior inventory problem would put Defendants on notice to scrutinize inventory controls."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *24.  Then, applying *Ricker*, the Court erroneously concluded that inference should be rejected.

The question in *Ricker* was whether an accounting irregularity "'similar in nature and temporally proximate to the reasons for the restatement'" could ***alone*** support an inference of scienter.  *Ricker*, 534 F. App'x at 500.  Plaintiff here, however, did not leap from knowledge of internal control deficiencies to scienter for the later accounting fraud, as the Court suggests.[10]  The sole – and highly relevant – inference sought was that Defendants Kenny and Robinson actual knowledge of the material control weaknesses "put [them] on notice to scrutinize inventory

---

[10]  "Plaintiffs also argue that because General Cable issued a restatement in 2005 that involved inventory-related accounting problems, its restatements eight years later stemming from other inventory-related problems suggest fraudulent intent."  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *23-*24.  But these inventory-control failings were still present in 2005, less than three years before the inventory controls in General Cable's ROW segment failed.  ¶¶116-119.

- 17 -

controls." *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *24. This notice, coupled with Kenny and Robinson's acknowledged obligation to oversee and maintain effective financial reporting controls, supports the strong inference that their disregard was reckless. This point was captured in the Complaint section title for these allegations: "General Cable's History of Ineffective Financial Controls Put Kenny and Robinson on Notice of the Need to Impose Effective Controls over Its ROW Operations and Further Evidence Scienter." ¶116. For this purpose, Plaintiff's allegation should have been credited.

### G.   Newly Disclosed Evidence of General Cable's Failed Internal Controls Should Be Permitted to Be Added to Plaintiff's Scienter Allegations

In conjunction with the restatements, General Cable comprehensively reevaluated the effectiveness of the Company's internal control over financial reporting. Through that process, General Cable noted that it was reviewing certain "commission payments" reaching employees of government-owned utilities and made by its Angolan subsidiary, which is part of General Cable's European segment. Through the Company's August 1, 2014, Form 10-Q report, Defendants disclosed:

> The Angolan review has focused upon payment practices with respect to employees of Public utility companies, use of agents in connection with such payment practices, and the manner in which the payments were reflected on our books and records, which may have implication under the Foreign Corrupt Practices Act.[11]

---

[11]   The FCPA prohibits "any . . . officer, director, employee, or agent of" a registered public company from giving or authorizing the giving of anything of value to:

> (1) any foreign official for purposes of—

> (A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

> (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government

Defendants also revealed they had contacted the SEC and the Department of Justice ("DOJ") to "advise them of this review, and we continue to cooperate with both agencies with respect to this matter."

On September 22, 2014, Defendants disclosed that the illegal payments to government officials went beyond Angola to include subsidiaries in Portugal, Thailand and India, the last two subsidiaries being members of ROW.  The illegal payments were made "at various times from 2002 through 2013."  These matters, too, were disclosed to the SEC and DOJ as part of the FCPA violations investigation.  SEC Form 8-K report, September 22, 2014.

These new allegations demonstrate that, contrary to the Defendants' repeated assurances that General Cable had effective controls over financial reporting, had implemented policies and procedures designed to promote ethical behavior and ensure compliance with the FCPA, and had procedures designed to ensure that material information relating to the Company was made known to them, the Defendants knew or recklessly disregarded that the Company's anti-corruption policies and internal controls were insufficient to ensure compliance with the FCPA.  Notably, General Cable's Code of Ethics; applying not only to Defendants but the Company's directors, officers and employees; also mandated the Company "must comply with all anti-corruption laws applicable . . . including the Foreign Corrupt Practices Act (FCPA)."  For the avoidance of any doubt, the Code of Ethics specifically states that that "No bribes, kickbacks, or other improper payments may be made or received whether individually or on behalf of General Cable, whether directly or indirectly, in connection with any of the Company's business."

---

or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.

15 U.S.C. §78dd-1.

The nature and scope of these matters and their further evidence of failed internal controls over financial reporting and disclosure were only made known on September 22, 2014 – well after the Complaint was filed.  No amount of investigation could have revealed these failings as, not surprisingly, they were the subject of a confidential, attorney-guided – and belated – internal review. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) ("To constitute 'newly discovered evidence,' the evidence must have been previously unavailable.").  Their importance as further indicia of Defendants' scienter, however, cannot be understated.  *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (evidence of bribery by company officials is "usually relevant to scienter.").  Importantly, these disclosures are not simply post-class period explanations of some alleged wrong.  They are contemporaneous examples of the pervasiveness of General Cable's failed internal controls and reckless oversight of them.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (reliance on facts postdating the class period is not "'fraud by hindsight'").  Plaintiff should not be foreclosed from supplementing its scienter pleading with these newly revealed facts.

## IV.   To Prevent Manifest Injustice, Plaintiff Should Be Given Leave to File the Amended Complaint

The Federal Rules of Civil Procedure serve "'to facilitate a proper decision on the merits,'" not to set the stage for "'a game of skill in which one misstep by counsel may be decisive to the outcome.'"  *Foman*, 371 U.S. at 181-82; *accord*, *Moore v. Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) ("[T]he thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather the technicalities of pleadings.'").  This principle has particular force in the context of fraud pleading.  *Morse*, 290 F.3d at 800; *see Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Adherence to these principles [governing leave to amend] is especially

- 20 -

important in the context of the PSLRA. . . .  In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

Here, the Court dismissed the Complaint with prejudice on its first review because it believed Plaintiff's scienter allegations were simply insufficiently particular.  *Doshi*, 2015 U.S. Dist. LEXIS 9306, at *33.  But, as discussed above, that determination specifically and the dismissal generally were both grounded on significant error.  So too, new pleading guidance from the *Omnicare* decision and new evidence of failed internal controls have been foreclosed from supporting Plaintiff's claims.[12]

Whereas here, "the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.  Moreover, there is no basis to find, and the Court has not found, undue delay, bad faith, purposeful delay, a failure to cure the pleading deficiencies, undue prejudice to

---

[12]   To the extent the Court's other particularity concerns stand, the Amended Complaint addresses them.  For example, the Amended Complaint alleges:

- particularized facts establishing intentional misconduct by Sandoval who "discouraged . . . personnel from disclosing" the theft and missing inventory, "failed to identify the matter in [the] quarterly certifications," "overrode controls," and "engaged in other improper actions";

- particularized facts explaining the Individual Defendants' motivation to conceal adverse information in order to avoid losing previously earned inventive compensation through Sarbanes-Oxley §304's and General Cable's own clawback;

- evidence of the Company's bribery of government employees, evidencing further internal control failings and potential FCPA violations; and

- additional facts demonstrating the inferences supporting scienter stemming from General Cable's improper bill-and-hold practices, the substantial materiality of the overstatements, the extended time and effort required to complete the restatements and the unlikely circumstance that the accounting errors uniformly acted to overstate or accelerate revenue and earnings.

Defendant's or futility of amendment.  Given the absence of these considerations, "the leave sought should, as the rules require be 'freely given.'"  *Id.*  To do otherwise would be manifestly unjust.

## V.      Conclusion

For the reasons stated above and to prevent manifest injustice, Plaintiff respectfully asks the Court to grant its joint Rule 59(e) and Rule 15(a) motion and deem Plaintiff's Amended Complaint as filed.

DATED:  February 24, 2015                 Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          JAMES A. CAPUTO
                                          M. ALEXANDRA ROYAL


                                                  s/ JAMES A. CAPUTO
                                          ──────────────────────────────
                                                  JAMES A. CAPUTO

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101-8498
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          JOHN K. GRANT
                                          Post Montgomery Center
                                          One Montgomery Street, Suite 1800
                                          San Francisco, CA  94104
                                          Telephone:  415/288-4545
                                          415/288-4534 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

                                          Lead Counsel for Plaintiffs

- 22 -

1008310_1

THE JAEGER FIRM, PLLC
STEVEN R. JAEGER
23 Erlanger Road
Erlanger, KY  41018
Telephone:  859/342-4500
859/342-4501 (fax)

Liaison Counsel

VANOVERBEKE MICHAUD
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 24, 2015.

s/ JAMES A. CAPUTO
JAMES A CAPUTO

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  JimC@rgrdlaw.com

# Mailing Information for a Case 2:14-cv-00022-WOB-CJS Doshi v. General Cable Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James Albert Caputo**
  jimc@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **David F. Fessler**
  dfessler@fsgattorneys.com

- **John K. Grant**
  johnkg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Steven D. Jaeger**
  sdjaeger@thejaegerfirm.com

- **Steven R. Jaeger**
  srjaeger@thejaegerfirm.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **Karen Pieslak Pohlmann**
  kpohlmann@morganlewis.com

- **Lesley Frank Portnoy**
  lportnoy@glancylaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **M. Alexandra Royal**
  aroyal@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Matthew J. Siembieda**
  msiembieda@morganlewis.com

Case: 2:14-cv-00022-WOB-CJS   Doc #: 123-1   Filed: 02/24/15   Page: 31 of 31 - Page ID#: 1220

- **Marc Sonnenfeld**
  msonnenfeld@morganlewis.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`