RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0128p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

SATISH DOSHI,

          *Plaintiff*,

CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

          *Plaintiff-Appellant*,

    *v*.

GENERAL CABLE CORPORATION; GREGORY B. KENNY; BRIAN J. ROBINSON,

          *Defendants-Appellees*.

No. 15-5621

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:14-cv-00022—William O. Bertelsman, District Judge.

Argued: March 16, 2016

Decided and Filed: May 24, 2016

Before: SILER, COOK, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Joseph D. Daley, ROBBINS GELLER RUDMAN & DOWD, LLP, San Diego, California, for Appellant. Marc J. Sonnenfeld, MORGAN, LEWIS & BOCKIUS, LLP, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Joseph D. Daley, James A. Caputo, Steven F. Hubachek, ROBBINS GELLER RUDMAN & DOWD, LLP, San Diego, California, for Appellant. Marc J. Sonnenfeld, Karen Pieslak Pohlmann, MORGAN, LEWIS & BOCKIUS, LLP, Philadelphia, Pennsylvania, David F. Fessler, FESSLER, SCHNEIDER & GRIMME, LLP, Fort Thomas, Kentucky, for Appellees.

# OPINION

COOK, Circuit Judge.  In October 2012, and again a year later, General Cable Corporation announced that it would reissue several public financial statements because they included material accounting errors.  Soon after, City of Livonia Employees' Retirement System ("Livonia") initiated this class-action suit against General Cable, its CEO Gregory Kenny, and its CFO Brian Robinson (collectively Defendants) for violating §§ 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.  Livonia asserts that each defendant acted at least recklessly in issuing or approving General Cable's materially false public financial statements.  The Defendants counter that General Cable's misstatements resulted from accounting errors and a theft scheme in its Brazilian operations of which the Defendants were unaware and that they promptly sought to remediate upon discovering them.  Agreeing with the Defendants, the district court dismissed Livonia's complaint with prejudice because it failed to plead scienter adequately.  The district court then denied Livonia's Rule 59(e) motion to amend the judgment, which included a request to file an amended complaint.  Livonia appeals both decisions.  We AFFIRM.

I.

General Cable manufactures and sells industrial cable and wire for use worldwide.  During the class period, Kenny served as General Cable's CEO, and Robinson as CFO.  As such, Kenny and Robinson both had access to General Cable's confidential financial information, and signed its SEC filings and Sarbanes-Oxley (SOX) certifications.

In 2007, General Cable acquired Phelps Dodge International Corporation as a privately held subsidiary.  Phelps Dodge had operations in Brazil.  Following the acquisition, General Cable realigned its management and financial reporting structure into three regions, including Rest of World (ROW), where General Cable placed Phelps Dodge.  General Cable chose Mathias Sandoval, Phelps Dodge's CEO, to head ROW.

In October 2012, General Cable announced that its previous 22 public financial statements (Forms 10-Q and 10-K) included material accounting errors and that investors should no longer rely on them. These errors required General Cable to restate its 2009 through 2011 Forms 10-Q and 10-K, as well as its first two 2012 Form 10-Qs. General Cable cited as the primary reasons for the restatement "a complex theft scheme in Brazil and, to a somewhat lesser extent, accounting errors, primarily in Brazil."

While preparing its first restatement, General Cable discovered additional problems requiring a second restatement, which it announced in October 2013. The second restatement covered the same financial documents as the first, plus General Cable's 2008 Forms 10-Q and 10-K, its third-quarter 2012 Form 10-Q, its 2012 Form 10-K, and its first-quarter 2013 Form 10-Q. This time, however, General Cable pointed to improperly recognized bill-and-hold sales[1] and unrecoverable value-added-tax assets associated with the goods stolen in Brazil as prompting the restatement.

Following the restatements, Livonia sued on behalf of purchasers of General Cable securities from November 3, 2010, to October 14, 2013. Livonia asserts that the restatements demonstrate that General Cable's original public financial statements were materially false in violation of the securities laws. Specifically, Livonia claims that the Defendants publicly misstated General Cable's financial data and erroneously certified both the data's accuracy and the effectiveness of General Cable's internal controls. Livonia alleges these misstatements occurred in business news publications, on calls with investors, and in public financial filings and SOX certifications. These misstatements artificially inflated prices for General Cable securities causing Livonia's investments to lose value.

As for scienter, Livonia's complaint identifies facts in seven categories that it argues support inferring that each defendant acted at least recklessly in making or authorizing the materially false statements.

---

[1] Bill-and-hold sales allow a seller to recognize revenue before delivering goods when the sales meet specified criteria.

No. 15-5621 *Doshi, et al. v. General Cable Corp., et al.* Page 4

*First*, Livonia claims that the Defendants failed to integrate Phelps Dodge and ROW into General Cable's internal control structure and shielded ROW from meaningful financial review. Relying largely on confidential witnesses,[2] Livonia alleges that these actions led General Cable's corporate controller to struggle to get acceptable financial information from ROW, especially "details." Kenny justified this lack of integration by asserting that ROW "[is] a successful organization." He also directed the General Cable finance department to back off when ROW management resisted attempts by General Cable employees to obtain "information concerning the new ROW operations." And ROW's CEO went "ballistic" when "anyone attempted to interact with any of the units in [the ROW CEO's] group." Kenny and Robinson also knew that General Cable had previously experienced material weaknesses in its financial controls.

*Second*, Livonia alleges that General Cable recognized revenue from bill-and-hold sales in Brazil that failed to meet four of the SEC's criteria. Despite these failures, Robinson personally approved each bill-and-hold sale in Brazil via email.

*Third*, Livonia asserts that Kenny and Robinson recklessly reviewed, evaluated, and certified the effectiveness of General Cable's internal controls. This is so, says Livonia, because despite Kenny and Robinson using the Committee of Sponsoring Organizations of the Treadway Commission (COSO) framework in their original review of General Cable's internal controls, they failed to discover weaknesses in those controls until applying the COSO framework a second time while preparing the first restatement. Livonia thus claims that Kenny and Robinson acted at least recklessly in not discovering the internal control weaknesses during their original COSO review. Moreover, Kenny and Robinson violated the COSO's mandate that information flow freely throughout an organization by allowing ROW's CEO to withhold information from corporate compliance officers.

---

[2] While courts often discount information provided by anonymous sources, *see Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756–57 (7th Cir. 2007), plaintiffs may rely on confidential witnesses if they plead facts with sufficient particularity to support the probability that a person in the confidential witness's position would possess the information alleged. *Emps. Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015); *see also Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 496 n.2 (6th Cir. 2013). We assume without deciding that these allegations satisfy that standard.

*Fourth*, Kenny and Robinson recklessly made SOX certifications because General Cable's internal controls failed to prevent the accounting errors that necessitated the restatements.

*Fifth*, Livonia posits that the size and duration of the accounting errors support an inference of recklessness. For fiscal years 2009 to 2012, General Cable cumulatively overstated net income to common shareholders by $60.5 million. Similarly, for fiscal years 2009 to 2011, General Cable overstated net income attributable to common shareholders, earnings per share, and operating income by as much as 53.76%, 53.92%, and 15.6%, respectively. The accounting errors covered slightly more than six years, and required two restatements and 449 days to fix. All the errors artificially inflated General Cable's reported financials.

*Sixth*, Livonia claims that General Cable's incentive compensation plans tied bonuses to earnings per share and stock price thereby motivating Kenny and Robinson to overlook errors. Both received millions in incentive compensation from 2007 to 2013.

*Seventh*, Livonia highlights that ROW executive management—*i.e.*, Sandoval—"overrode controls" leading to delays in reporting inventory accounting issues and allegations of theft to General Cable's executive management. As General Cable admitted:

> ROW executive management did not report the inventory accounting issues to [General Cable's] executive management until late September 2012, even though ROW executive management was aware of the issues no later than January 2012. In this regard, ROW executive management did not investigate the matter promptly, did not report findings in its belated inquiry on a timely basis, [and] discouraged Brazilian personnel from disclosing the matters . . . .

(R. 97-2, General Cable 2012 Form 10-K/A.) ROW executive management overemphasized the meeting of business plan goals at the expense of proper financial reporting.

The Defendants moved to dismiss the complaint, contesting only the adequacy of Livonia's scienter allegations. The district court granted the motion and dismissed the complaint with prejudice, determining that Livonia's complaint failed to create a strong inference that any defendant acted with scienter.

Livonia then moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment and "to permit the filing of [an] . . . Amended Complaint," which it attached to its motion. In it, Livonia added allegations to further support inferring scienter. First, in 2014, General Cable disclosed potential Foreign Corrupt Practices Act (FCPA) liability resulting from improper payments to officials in government-owned utilities in Portugal, Thailand, Angola, and India. Second, in its public financial documents, General Cable failed to disclose that it recognized revenue from bill-and-hold sales despite SEC guidelines requiring disclosure. Third, the fear of losing incentive compensation under General Cable's and SOX's clawback policies motivated Kenny, Robinson, and Sandoval to conceal misconduct, and Sandoval lost a 2011 bonus under General Cable's clawback policy because of his conduct related to "certain accounting matters in Brazil." Finally, on a January 2012 conference call, Sandoval discussed "that millions of dollars of inventory were missing and believed stolen."

The district court denied the motion, determining that "the proposed amended complaint would be futile." Livonia appeals both the dismissal of its complaint and denial of its Rule 59(e) motion.

## II.

**A. Livonia's Section 10(b) and Rule 10b-5 Claims**

We review a complaint's dismissal under Rule 12(b)(6) de novo, *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011), "'constru[ing] the complaint in the light most favorable to the plaintiff' and 'accept[ing] all well-pleaded factual allegations as true,'" *id.* (quoting *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010)).

The Private Securities Litigation Reform Act of 1995, (PSLRA) Pub. L. No. 104–67, 109 Stat. 737, requires that a plaintiff "shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind" in violating the securities laws. 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as

compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. This standard requires courts to consider "plausible opposing inferences." *Id.* at 323. Pleadings that fail to meet this standard "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

In the securities-fraud context, scienter includes a "knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48–50 (2011). "Recklessness is . . . highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004), *abrogated on other grounds by Matrixx*, 563 U.S. at 48–50) (internal quotation marks omitted). Recklessness requires more than negligence and is "akin to conscious disregard." *Id.* (quoting *PR Diamonds*, 364 F.3d at 681). Before drawing an inference of recklessness, courts typically require "multiple, obvious red flags," *PR Diamonds, Inc.*, 364 F.3d at 686–87, demonstrating an "egregious refusal to see the obvious, or to investigate the doubtful," *id.* at 695 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

In determining whether a plaintiff adequately pleaded scienter, we review "all the allegations holistically," *Tellabs*, 551 U.S. at 326, considering a non-exhaustive list of nine factors:

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (en banc) (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999), *abrogated on other grounds by Tellabs*,

551 U.S. at 314; *see also In re Omnicare, Inc. Sec. Litig*, 769 F.3d 455, 473, 484 (6th Cir. 2014) (applying the *Helwig* factors).

Livonia contends that (1) General Cable acted at least recklessly in issuing its public financial statements, and (2) Kenny and Robinson acted at least recklessly in issuing or authorizing General Cable's public financial statements. We consider each contention in turn.

*1. General Cable's Scienter*

Livonia's argument that it successfully pleaded that General Cable acted with scienter proceeds in three parts. First, Livonia relies on all seven categories of factual allegations identified above to establish scienter, but emphasizes ROW executive management's knowledge of and failure to report theft and inventory accounting errors. Second, Livonia says that ROW executive management's—specifically Sandoval's—knowledge imputes to General Cable because Sandoval furnished information used in General Cable's false public financial statements. *See Omnicare*, 769 F.3d at 476, 483. Third, Livonia asserts that Sandoval acted at least recklessly in providing ROW's financial data to General Cable, and because his knowledge imputes to General Cable, Sandoval's recklessness imputes as well.

General Cable counters with two arguments: Livonia's allegations regarding Sandoval's "knowledge" fail to meet the PSLRA's particularity requirements, and even if Sandoval's knowledge imputes to General Cable, *Omnicare* requires this court to analyze Livonia's allegations "collectively" using the *Helwig* factors, 251 F.3d at 552, to determine General Cable's scienter, which yields no such inference.

a. Livonia Pleaded Sandoval's Knowledge Sufficiently

General Cable asserts that the allegations regarding Sandoval's knowledge lack the requisite particularity because they target ROW executive management generally; lack a time component; and fail to explain adequately what Sandoval knew. But Livonia sufficiently alleges that Sandoval knew of theft and inventory accounting errors in Brazil by January 2012 but failed to report those problems to General Cable until September 2012.

First, Livonia's allegations pertain to Sandoval. While General Cable's 2012 Form 10-K/A identifies ROW executive management generally, both General Cable and Livonia submitted the same document to the district court confirming that Sandoval served as ROW's CEO. Additionally, Livonia and General Cable briefed these allegations as relating to Sandoval. Finally, in its amended complaint Livonia names Sandoval as a participant in a conference call discussing the theft and missing inventory in Brazil.[3]

Second, Livonia sufficiently alleges that Sandoval knew of the theft and accounting errors in Brazil by January 2012 but failed to disclose them until September 2012.

Third, a fair reading of General Cable's 2012 Form 10-K/A shows that the theft and inventory accounting issues that Sandoval failed to report were those identified in the immediately preceding section of the 2012 Form 10-K/A labeled: "Inventory Control Deficiencies in Brazil." Moreover, the conference-call participants, including Sandoval, discussed theft and missing inventory in Brazil.

### b. Sandoval's Knowledge of Theft and Accounting Errors—Not His State of Mind in Transmitting ROW's Financial Data—Imputes to General Cable

Neither party disputes that any properly pleaded knowledge attributable to Sandoval imputes to General Cable. *See Omnicare*, 769 F.3d at 476. They disagree, however, about the implications of imputing that knowledge. Livonia argues that Sandoval acted at least recklessly in withholding his knowledge from General Cable and that state of mind—recklessness—imputes to General Cable, thereby establishing scienter. General Cable contends that this court imputes only Sandoval's knowledge of the theft and inventory accounting errors to General Cable and then applies the *Helwig* factors to determine scienter.

Even assuming that Sandoval acted recklessly in transmitting ROW's financial data to General Cable, only his knowledge of theft and accounting errors—not his state of mind—imputes to General Cable. *Omnicare* supports imputing a corporate executive's or employee's state of mind to a corporate defendant when such person *makes a public misstatement*.

---

[3] Because "ROW executive management" sufficiently targets Sandoval, and we review both the district court's denial of Livonia's Rule 59(e) motion to amend and the complaint's dismissal de novo, *see infra* II.C, we consider allegations regarding Sandoval from the original and proposed amended complaint together.

*See* 769 F.3d at 476, 481. But Livonia identifies no public misstatement by Sandoval from which to impute his recklessness directly to General Cable. Instead, Livonia alleges that Sandoval submitted ROW's financial data to General Cable, not that he drafted, reviewed, or approved General Cable's erroneous public financial statements.

In these circumstances, our precedents teach that Sandoval's knowledge of theft and accounting errors in Brazil imputes to General Cable, and that we then apply the *Helwig* factors to analyze whether all the facts alleged give rise to a strong inference that General Cable acted with the necessary scienter. *See, e.g.*, *Omnicare*, 769 F.3d at 478, 483–84 (imputing a vice president's knowledge—no allegations suggested the vice president acted with scienter in issuing, reviewing, or approving a public misstatement—to the company, then applying the *Helwig* factors to determine the company's scienter); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 686–90 (6th Cir. 2005) (applying the *Helwig* factors to determine the company's scienter in issuing public misstatements after imputing the knowledge of an executive vice president—who had not personally drafted, reviewed, or approved the public misstatements—to the company).

### c. Livonia Failed to Plead Adequately that General Cable Acted Recklessly

Considering all well-pleaded allegations holistically, *Tellabs*, 551 U.S. at 326, and applying the *Helwig* factors, Livonia's complaint fails to produce a strong inference that General Cable acted recklessly by issuing its public financial statements.

Two *Helwig* factors support inferring scienter: (1) divergence between internal reports and external statements on financial data; (2) disregard for the most current factual information before making public financial statements. *See Helwig*, 251 F.3d at 552. First, from January 2012 to September 2012, by virtue of Sandoval's knowledge, General Cable issued public financial statements that failed to include any warnings or disclaimers about theft or inventory accounting issues in Brazil. Second, in issuing those statements General Cable disregarded Sandoval's knowledge and the attendant risk that the issues in ROW rendered General Cable's statements false. And General Cable's public financial statements in fact significantly overstated its financial performance. These factors can be particularly important in labeling a corporate

defendant as reckless. *See Bridgestone*, 399 F.3d at 688–89 (calling a divergence between internal reports and external statements the "key factor" in deeming a corporate defendant reckless).

The disparity between Sandoval's knowledge and what General Cable publicly misstated, however, reduces the force behind these factors. Sandoval knew about theft and inventory accounting errors in ROW's Brazilian operations when he reported ROW's financial data to General Cable. But General Cable misstated its *firm-wide* financial data of which ROW's data composed only a part. This disparity diminishes the impact of these factors on the scienter analysis. *See Omnicare*, 769 F.3d at 484 (determining that the "disparity between the levels of generality at which the internal reports and external statements" were framed lessened the import of the divergence factor and citing *Bridgestone*, 399 F.3d at 684, as a case where such a disparity "did not exist").

Seven factors favor rejecting a scienter inference. Livonia pleads no facts with sufficient particularity implicating suspicious insider trading or failure to disclose impending stock sales. *See Helwig*, 251 F.3d at 552. And while Livonia maintains that incentive compensation motivated the misstatements, it fails to allege that the financial misstatements actually increased incentive compensation. Nor does Livonia allege evidence of bribery by a top official or quickly settled ancillary lawsuits. *See id.* Livonia alleges accounting errors, but its complaint lacks allegations that only someone with a high level of sophistication could have understood negative implications from General Cable's accounting disclosures. *See id.* The closeness-in-time factor also lends negligible support to inferring scienter. *See id.* Between January 2012 and October 29, 2012, (the date General Cable announced its first restatement), General Cable filed public financial disclosures on February 23, 2012; May 4, 2012; and August 3, 2012. Neither the approximately nine-month gap from the February misstatement nor the 86-day gap from the August misstatement to General Cable's restatement announcement allows an adverse scienter inference. *See Bridgestone*, 399 F.3d at 684, 687–88 (determining that a week-long gap—but not a four-month gap—supported inferring scienter).

Based on Sandoval's knowledge and the magnitude of the financial misstatements, one could infer that General Cable acted recklessly by issuing its public financial statements from

January 2012 to September 2012. But a countervailing inference remains stronger: a theft scheme racked General Cable's operations in Brazil where local managers overrode accounting procedures, which, when coupled with the legitimate freedom afforded ROW to report its financial data, led General Cable to issue materially false public financial statements. Livonia's allegations therefore fail to create a strong inference that General Cable acted with scienter.

   *2. Kenny's and Robinson's Scienter*

Livonia relies on the same factual allegations (but not ROW executive management's actions) to support inferring Kenny and Robinson acted with scienter. As with General Cable, those allegations fail to produce a strong inference that Kenny or Robinson acted with scienter in issuing or approving General Cable's public financial statements.

The *Helwig* factors lend even less support to inferring scienter from the allegations pertaining to Kenny and Robinson than those relating to General Cable. Indeed, the allegations regarding Kenny and Robinson implicate one *Helwig* factor: disregarding the most current factual information before making public financial statements. *See Helwig*, 251 F.3d at 552. The lax oversight that Kenny and Robinson directed General Cable controllers to perform over ROW's financial reporting admits of inferring that they disregarded the risk that ROW reported inaccurate information. But the analysis of the other eight *Helwig* factors does not lead us to infer scienter. For the reasons already articulated, the seven factors that provided no support for inferring scienter against General Cable buttress the same conclusion regarding Kenny and Robinson. And absent Sandoval's knowledge of inventory theft and accounting errors in Brazil, which Livonia did not connect to Kenny or Robinson, the facts alleged fail to show that Kenny or Robinson recognized or recklessly disregarded a divergence between internal reports and external statements on financial data.

The allegations holistically, *see Tellabs*, 551 U.S. at 326, lend some support to an inference that Kenny and Robinson consciously disregarded the obvious risks that each issued or authorized false public financial statements. But again, these allegations produce a stronger countervailing inference: that a theft scheme in Brazil aided by local managers overriding financial controls, combined with ROW's legitimate freedom to submit financial data to General

Cable, resulted in Kenny and Robinson at most negligently issuing or authorizing false public financial statements.

**B. Livonia's Motion to Amend Judgment**

We review the denial of Livonia's Rule 59(e) motion to amend de novo because the district court rejected the proposed amended pleading as futile. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)); *see also Babcock v. Michigan*, 812 F.3d 531, 541 (6th Cir. 2016). Livonia argues that the district court erred in making that determination.

Livonia relies on four new or supplemented categories of allegations in arguing its amended complaint pleads scienter: (1) possible FCPA violations disclosed in General Cable's August 2014 Form 10-Q; (2) General Cable's failure to disclose to investors that it recognized revenue from bill-and-hold sales; (3) incentive compensation and General Cable's clawback policy, which motivated Kenny, Robinson, and Sandoval to conceal the Brazilian accounting problems; and (4) a January 2012 conference call in which Sandoval discussed inventory issues and theft in Brazil.[4]

*1. FCPA Violations*

In August 2014, General Cable disclosed potential FCPA violations: improper payments to officials in government-owned utilities in Portugal, Thailand, Angola, and India. Livonia argues that these possible violations occurred for more than ten years and evidence lax oversight and review of financial controls. But Livonia fails to connect these allegations to the unreported theft and inventory accounting problems in Brazil. Livonia also makes no allegation that Kenny, Robinson, Sandoval, or any other specific General Cable employee knew of the improper payments. Finally, these allegations amount to impermissible fraud by hindsight: "Had the defendants properly used the COSO framework as they claimed, they would have known about the accounting errors alleged herein on a timely basis." Such allegations cannot give rise to a strong inference of scienter. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 402–03 (6th Cir. 2009), *abrogated on other grounds by Matrixx*, 563 U.S. at 48–50.

---

[4]We previously considered that conference call.

### 2. *Nondisclosure of the Bill-and-Hold-Sale Revenue-Recognition Policy*

A SEC accounting bulletin alerts companies to disclose their revenue-recognition policy, including if "a company has different policies for different types of revenue transactions." SEC Staff Accounting Bulletin No. 104, 68 Fed. Reg. 74,436-01, 74,447 (Dec. 23, 2003) (to be codified at 17 C.F.R. pt. 211, subpt. B). Livonia thus claims that the Defendants acted recklessly by not including the bill-and-hold-sale revenue-recognition policy in General Cable's public financial statements. This bulletin, however, imposed no legal duty for the Defendants to report that policy. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 163 (2d Cir. 2000) (noting that SEC accounting bulletins lack the force of law). And Livonia fails to allege that either Kenny or Robinson knew about this bulletin and disobeyed it. Furthermore, nondisclosure of bill-and-hold-sale revenue recognition allows no inference that any defendant acted with conscious disregard with respect to General Cable issuing false financial statements.

### 3. *Incentive Compensation and Clawback Policies*

The proposed amended complaint bolsters its original allegations regarding incentive compensation by adding Sandoval to the mix and including assertions that Kenny, Robinson, and Sandoval stood to lose previously issued incentive compensation under General Cable's and SOX's clawback policies. But "the amended complaint still lacks facts showing that the inflated stock price actually affected [Kenny's or Robinson's] incentive compensation." General allegations such as these could pin an improper motive on any executive receiving incentive compensation. In any event, the allegations suggest that when Kenny and Robinson became aware of the theft and inventory accounting errors, they disclosed them and worked to fix them.

The amended complaint similarly fails to allege that the theft and inventory accounting errors that Sandoval failed to report resulted in his receiving higher incentive pay. And while Sandoval may have feared losing his incentive compensation, Livonia does not allege that Sandoval made any of the false public statements upon which Livonia relies. Moreover, after conducting an internal investigation of "certain accounting matters," General Cable disciplined Sandoval by clawing back his 2011 Annual Incentive bonus and forcing him to resign. These remedial measures counsel against inferring that General Cable acted with scienter.

No. 15-5621 *Doshi, et al. v. General Cable Corp., et al.* Page 15

Adding the amended complaint's allegations to our holistic review therefore leads to the same conclusion: no defendant acted recklessly in issuing or authorizing General Cable's false public financial statements. We therefore affirm the district court's denial of Livonia's motion to amend.

### C. Livonia's Section 20(a) Claims

Section 20(a) of the Securities Exchange Act provides that "[e]very person who . . . controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). Because Livonia's complaint alleges no primary violation of the securities laws, its § 20(a) control-person claims were properly dismissed. *See Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 947 (6th Cir. 2009).

### III.

For the foregoing reasons, we AFFIRM the district court's dismissal of Livonia's complaint with prejudice and its denial of Livonia's Rule 59(e) motion to amend.